Mr. Justice Hagner
delivered the opinion of the Court:
The complainants, who are solicitors of this court, filed their bill averring that they were employed to prosecute a claim in behalf of the defendant Dickinson, against the United States, first, before the Court of Claims, and after-wards before a committee of Congress, and that through their efforts in great part the sum of $96,000 was finally appropriated by Congress to pay the amount found to be due to the claimant; that as his counsel they applied to the Treasury authorities and received a draft payable to the defendant, for this large sum of money; that they informed Dickinson they had the draft in their possession, and claimed a lien on it for their fees, but said they would be prepared to hand it over to him when he should pay the fees which they claimed to be due. In another part of their bill it is practically admitted that Dickinson on his part offered to pay their fees as soon as they should send him the draft; that they had reason to fear he might obtain from the authorities a duplicate draft and draw the money, and thus deprive them of what they thought to be their established lien upon the fund, and they ask that an injunction be granted by the court to enjoin this action on the part of this defendant, and to prevent any interference to the prejudice of their rights.
A restraining order was issued by the justice holding the chancery term; and various other proceedings were taken which are made the subject of litigation before this court. The defendant is a non-resident, and there had been no service of process upon him; but some time after the filing of the bill, Mr. Brown, a solicitor of the court, entered his appearance for the defendant. It was alleged, on behalf of Dickinson, that Brown had no employment whatever to appear in the case, but happened to be present in the clerk’s office, when some friends of Dickinson applied to the clerk to see the papers and the restraining order, which they understood had been passed, but the clerk declined to let *303 the papers go into the hands of anybody but the counsel of Dickinson; whereupon Brown, for the sole purpose of obliging Dickinson’s friends and relieving the clerk of all embarrassment, directed him to enter his appearance and give his receipt for the papers as counsel of Dickinson. As soon as Dickinson heard of this he disclaimed any authority on the part of Brown to act as his solicitor; and it was conceded by Brown that the facts were as I have just stated them.
The first contention of complainants is that the justice below erred in passing an order on the 31st of December, 1888, striking out the appearance of Brown, which, under the circumstances stated, had been entered generally for the defendant on the 3d of October, 1888, and in vacating the decree pro confesso passed after such appearance; and also in refusing to order a commission to take the testimony of a witness named by them, bearing upon the question of the authority of Brown to enter his appearance. In considering these points we are not to be understood as assenting to the proposition of the complainant, that upon an appeal to the General Term we are bound to.consider the merits of an interlocutory order previously passed in the cause, and which had not at the time been appealed from. We declined to pursue this course in the recent case of Robeson vs. Niles. The order vacating the decree pro confesso might perhaps have been considered as one affecting the merits of the cause or proceeding, and if so would have furnished an occasion for an appeal at the time; but the refusal of the justice below, on the 3d of December, to extend the time to the complainant to take testimony upon the point indicated, which had been previously limited to the 7th day of December,' was plainly a matter of discretion, and not reviewable. Among other reasons why the justice was right in refusing to pass the order to take testimony at that time, is the consideration that the issuing of a commission to take testimony presupposes that the party against whom it is to operate had already entered an appearance, and it might, *304 therefore, have been an assumption of the very point which the plaintiff was then trying to establish.
■ The propriety of the order of the justice striking out the appearance is to some extent involved in the inquiry whether up to that time the defendant had authorized a general appearance to be entered in his behalf.
If Brown was authorized to enter such an appearance on the the 3d of October, then it ought not to have been stricken out. If he was not so authorized, then clearly his name should have been removed from the docket. The ai’gument of the complainants uptifa. the question of power and the rightfulness of its exercises, under the circumstances of the case, is fully met by the decision of the Supreme Court in the case of Shelton vs. Tiffin, 6 Howard, 186, where it was held that the appearance by counsel who, it is alleged, had no authority to waive process and defend a suit, maj' be explained ; that such an appearance, unless authorized, does not bind a party appeared for; that a judgment or decree rendered in consequence of such an appearance is a nullity, and that such wan.t of authority may be proved by the attorney himself.
It is next insisted that the notice served upon the plaintiff’s counsel by Mr. Davidge, with a copy of his proposed motion, constituted in fact a general appearance for the defendant and justified the subsequent motion of the plaintiff, on the 25th day of January, 1889, that the court should enter a rule against defendant to plead, answer or demur to the bill within ten days. The notice of Mr. Davidge stating that he appears in the cause not generally but only for the special purpose of his motion, gives notice that on the 7th of January, 1889, he will file a motion to set aside the restraining order and vacate the preliminary injunction upon the grounds: First, that the court had no jurisdiction to make such order; second, that the case, made by the bill is not one in which said order could be made; third, that the complainants have no such lien on the draft or'on the fund *305 appropriated by Congress for tbe payment of their alleged claim for counsel fees as would entitle them to the relief claimed.
The complainant’s counsel, after they were served with this notice, assumed that it amounted to the actual filing of the indicated motion by counsel for defendant, and thereupon moved that the defendant should be required to plead or answer, and that testimony should be taken in their behalf.
It is conceded that Mr. Davidge. never filed his proposed motion, and avowed his determination not to do so, as soon as the motion of complainants’ counsel was brought to his attention; and his proposed motion appears in the record in no other way, except as it was embodied in the motion of complainants’ counsel.
If Mr. Davidge had actually presented the motion to the court, the- contention of the complainants’ solicitor would have had the support of very .respectable authorities; for the notice stated it wTould be based not only upon the ground that the court below1 wras without authority to grant the restraining order, but also upon the alleged want of equity in the bill. Jones vs. Andrews, 10 Wall., 332; Elliott vs. Lawrence, 43 Ohio, 177. But this is not the predicament of the matter before us, and we cannot agree that the proposed intention of counsel, abandoned and never acted upon, can be the equivalent of a deliberate waiver by the defendant of his legal privilege to be impleaded at the place of his domicile.
Neither Mr. Davidge’s appearance- for the special purposes of the notice, to strike out Brown’s appearance, nor his participation .in the argument below or in this court, could constitute a general appearance for the defendant. The cases cited by the complainants show that a special appearance may be made without such compromising effect upon the defendant’s immunities as a non-resident as are insisted upon.
*306 We are next to consider the propriety of the order of the justice below, of the 31st of December, 1888, overruling the motion of the complainant’s solicitor to compel the defendant to plead, demur or answer bjr a day certain. As this was predicated only of the idea of the equivalent of a general appearance for the defendant by Mr. Davidge, it necessarily follows with our decisiomthat this predicate is unfounded.
The main question in the case is whether the complainants have presented such a case as should upon their own showing entitle them to the injunction prayed for, to prohibit the defendant from asking for or receiving from the Treasury authorities a duplicate draft in payment of the appropriation, or otherwise imperiling or destroying the complainant’s lien upon the original draft.
In a proper case courts of equity would grant such relief, for as the part of the fund transferred by the proper assignment nó longer belongs to the party about to receive it, he ought not to be allowed to carry off the entire fund, including the part so assigned which is the property of another. The decision of the highest courts have repeatedly explained the character of the lien or equitable assignment which they will thus protect.
The' Supreme Court, in Wright vs. Ellison, 1 Wall., 16, in deciding that the facts there were insufficient to establish such an assignment or lien, says: “ The rules of equity are as fixed as those of law, and this court can no more depart from the former than .the latter. Unless the complainant has shown a right to relief in equity, however clear his right at law, he can have no redress in this proceeding. In such cases the adverse party has a constitutional right to a trial by jury.” “ The matter seems to have been left to rest upon the principle of quantum meruit, to be settled by the agreement of the parties when the business was brought to a close. The doctrine of equitable assignments is a comprehensive one, but it is not broad enough to include this case. It is indispensable to a lien thus created that there should *307 be a distinct appropriation of the fund by the debtor and an agreement that the creditor is to be paid out of it.”
Similar language is used in Trist vs. Childs, 21 Wall., 447: “ It is well settled that an order to pay a debt out of a particular fund belonging to the debtor, gives to the creditor a specific equitable lien upon the fund, and binds it in the hands of the drawee. A part of the particular fund may be assigned by an order and the payee may enforce the payment of the amount against the drawee. But a mere agreement to pay out of such a fund is not sufficient. Something more is necessary. There must be an appropriation of the fund pro tanto, either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor.” Poter vs. White, 127 U. S., 266.
Do the averments of this bill disclose such a lien or assignment? We are not considering here whether they have an attorney’s lien upon this warrant, for that would not satisfy them. Under such a lien they would have a right to hold the warrant, and in any way they could realize the fees which they are entitled to as attorneys by means of that possession. But the question relates to their possession of such an equitable lien or assignment as is recognized in the above cases. We think the bill shows no such state of facts. It states in the first place their employment; that they became “ dissatisfied with the unsatisfactory character of their employment, although their services up to that time had been performed with the full knowledge and acquiescence, and upon consultation and in co-operation with the defendant.” Thereupon they wrote to the defendant, advising him of their dissatisfaction, “and informing him that they desired their employment and compensation to be directly with him, and that the usual compensation for the successful management of such cases, based upon an entirely contingent fee, was a sum equal to from 25 to 33 per centum *308 of the amount recovered, and advised the defendant that such was the compensation that complainants should expect should he desire complainants to continue in charge of the case;” “that the defendant not dissenting to the fee earnestly expressed his entire confidence in the skill and ability of the complainants, and insisted upon the continuation of their services, and asserting to complainants that he wrould pay a liberal fee therefor.” They file the correspondence between Mr. Fay and Mr. Dickinson. Mr. Dickinson,-in his letter in February, 1886, says: “I have no desire for you to retire from the case. You know very well and understand its merits. I have entire confidence in your proper presentation of it to the court, and I believe the court will do me justice. Too much publicity has already been given to the case, which I fear may be injurious. I will try soon to get it out of the present wrangle, if possible. As you have been to some trouble and expense in procuring testimony, I herewith enclose my draft on Messrs. P. Van Volkenburgh & Company for $200, which please acknowledge.” That seems to be the extent of the ■acquiescence or promise on his part alluded to in the bill.
How does this state anything‘amounting to an assignment of the draft or of the fund or any part of it? It does not even constitute a contract which any court of law could enforce. The complainant asserted that in similar cases 25 or 33 per cent, is a fair fee, and that they would expect such in this case. Now, what is “from 25 to 33 per cent.?” Is it 26 per cent, or 27% per cent., or any of the intermediate sums or fractions between the amounts named ? Where is there any agreement on the part of this defendant to pay any definite sum? The bill sets forth the facts most favorably for the complainants, and the extent of any engagement by the defendant is the statement that he would pay them a “ liberal fee.”
It may be he thought 10 per cent, of the amount recovered would be a liberal fee, and above all there is not the *309 slightest pledge by the defendant that whatever he is to pay was to come out of this fund. On the contrary, the letter filed shows that the only fee he ever paid the complainant, so far as appears in the case, came out of his own pocket before the claim had been received by him or even allowed by the authorities. It is, therefore, utterly out of the question, upon their own showing, to find any such lie'n or equitable assignment.
The complainants next insist that the justice was wrong when, in the concluding part of this order of the 7th day of February, 1889, he refused to allow an order of publication to be issued against the defendant as a non-resident. Of course this application was entirely at .variance with the previous contention that there had been an appearance in the cause by Mr. Brown or Mr. Davidge. But was the court right in refusing to issue the order of publication ? Here its attention was directly called to the pretention that the bill did sufficiently disclose an equitable lien in favor of the complainants, and challenged as he thereby was to issue that order, its passage, under the circumstance in which the case then stood, would have been a direct indorsement by the justice that the bill disclosed an equity sufficient to support the relief prayed for.
It is urged that Section 808, R. S. D. C., provides that the proceeding to enforce any lien shall be by bill or petition in equity; and that by Section 787 publication may be substituted for notice upon a defendanLwho cannot be found, in proceedings to enforce any lien, &c., and hence that the justice should have passed the order.
But the latter section applies only where the court sees there is a lien, and certainly not to a case where the court sees no such lien is disclosed.
- There is another objection which is fatal to the plaintiffs’ claim, and which shows they had no standing here, either to obtain the relief prayed for, or as ancillary to that relief, to require the court to issue the order of publication. We *310 refer to the Act of 1853, February 26, which provides that the transfer or assignment of any claim against the United States, or of any part thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or authority for receiving payment for such claim, or of any part or share thereof, shall be absolutely null and void, unless freely made and executed in the presence of at least two attesting witnesses, after the allowance of said claim, the ascertainment ■of the amount due, and the issuing of a warrant for its payment. No such assignment is claimed to have been made in this case.
It is insisted that this particular ca,se is not within the terms of the Act of 1853, since it is not within the mischief of the law. But we think it too clear for argument that the present claim is entirely within the mischief as it is within the words of the law.
The decree below is affirmed.